IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| LAURA TIDWELL BOOK, | ) | |
| | ) | Civil Action File No.: |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE OF GEORGIA | ) | JURY TRIAL DEMANDED |
| DEPARTMENT OF ECONOMIC | ) | |
| DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

### INTRODUCTION

COMES NOW Plaintiff, Laura Tidwell Book ("Book" or "Plaintiff"), by and through her undersigned counsel, and files this Complaint for damages, and in support of thereof shows the Court as follows:

### SUMMARY OF ACTION

1.

This is an action for damages against Defendant arising under the following statutes:  The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112, et seq. ("ADA"), Family and Medical Leave Act of 1993, 29 U.S.C. 2601, et.seq. ("FMLA"), Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §§ 2000e, et seq., and 42 U.S.C. 1981A ("Title VII"); as well as the anti-retaliation provisions of those statutes.

## JURISDICTION

2.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 in that it involves a federal question arising under the laws of the United States.

## VENUE

3.

Venue is proper in the Middle District of Georgia under 28 U.S.C. § 1391(b) because all or a substantial portion of the acts complained of occurred within the State of Georgia and the jurisdiction of this Court.

## PARTIES

4.

Plaintiff Laura Tidwell Book is a Caucasian female and a citizen of the United States and the State of Georgia.  Plaintiff resides in Columbus, Georgia and was employed by Defendant in Columbus, Georgia.

5.

Defendant is a state department, organized and existing under the laws of the State of Georgia, subject to suit pursuant to the facts as set forth below.  Pursuant to O.C.G.A. § 32-2-5, Defendant may be served with process on Pat Wilson.,

Commissioner of the Georgia Department of Economic Development at Technology Square, 75 5th Street N.W. Suite 1200 Atlanta, GA 30308. Defendants may also be served with process on Wade Damron, Department of Administrative Services, Risk Management Services, 200 Piedmont Ave., S.E., Suite 1804, West Tower, Atlanta, GA 30334 or Chris Carr, Office of Attorney General, 40 Capitol Square, SW, Atlanta, GA 30334.

6.

Defendant was and is an "employer" within the meaning of the ADA, FMLA, and Title VII of the Civil Rights Act, as well as the retaliation provisions of those statutes.

## ADMINISTRATIVE REQUIREMENTS

7.

Plaintiff filed a charge of discrimination with the EEOC dated February 12, 2021, and numbered 410-2021-02115.

8.

Plaintiff received a Notices of Right to Sue dated February 16, 2021, from the EEOC on or about February 16, 2021.  Copies of the same is attached hereto as Exhibit "A".

9.

This action has been brought within 90 days of Plaintiff's receipt of the

Notice of Right to Sue.

## FACTS

10.

Plaintiff, Laura Tidwell Book, is a Caucasian female, who has been discriminated against on account of her disabilities, in violation of the Americans with Disabilities Act, as amended and retaliated against for exercising her rights thereunder.

11.

Mrs. Book also has been discriminated against on account of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended.

12.

Mrs. Book was initially employed by the Department of Economic Development as a part-time employee at the Georgia Welcome Center in Columbus, Georgia.

13.

Throughout her employment by Defendant, Mrs. Book was later promoted to a full-time visitor information specialist on June 16, 2014 for the Columbus, Georgia Welcome Center.

14.

Later, Mrs. Book was also offered and declined a promotion to manager of

the visitor information center prior to the hiring of the current manager, Lativia Rivers.

15.

Prior to Mrs. Book's hiring and throughout her employment with Defendant, Mrs. Book suffered from depression, bipolar disorder and slowed rapid recall as a residual effect of a pediatric brain tumor.

16.

Defendant was well aware of Mrs. Book's disabilities prior to her hiring and throughout her employment.

17.

Despite Mrs. Book's disabilities, she has always been able to perform the tasks required for her position.

18.

Throughout her employment, Mrs. Book has been the subject of discriminatory conduct and discussions with other employees and superiors regarding both her race and disabilities.

19.

On or about May 19, 2015, Mrs. Book filed a complaint inquiry with the EEOC in regards to the discrimination she suffered due to her race and disabilities.

20.

After submitting her inquiry to the EEOC, Mrs. Book received even worse

disparate treatment from her superiors.

21.

Given her love for her job and fear of retaliation, Mrs. Book decided against

filing a formal charge of discrimination and continued her employment with

Defendant. She attempted to ignore the disparate treatment hoping it would

eventually end.  However, she ultimately continued to endure discrimination

and retaliation based on her race and disabilities.

22.

On one occasion after Mrs. Book complained of a discriminatory racial

incident that occurred, Mrs. Book's supervisor and manager of the Welcome

Center, Lativia Rivers, took Mrs. Book into her office along with other employees

and told Mrs. Book that she didn't understand why Mrs. Book would feel offended

or discriminated due to her race and proceeded to belittle Mrs. Book's complaints.

The other employees present for that conversation, including Lativia were all

African-Americans while Mrs. Book was the only Caucasian present.

23.

There were other occasions throughout Mrs. Book's employment when

workers described "colored people time" being different than "white people time"

to demonstrate how African- Americans could move and work slower than Mrs.

Book.

24.

On yet another occasion, one worker while talking to Mrs. Book, referred to

another worker as a "n****r" while working.

25.

There were multiple occasions when comments were made regarding Mrs.

Book's disabilities including Lativia discussing Mrs. Book's medical conditions

with others and asking Mrs. Book in front of other coworkers if she had "cats in

her head" when referencing her mental disabilities.

26.

Despite Mrs. Book notifying Lativia and Karen Hampton with Human

Resources numerous times of these incidents, the working environment did not

change, other than to become harder for Mrs. Book due to her complaints.

27.

Throughout her employment, Mrs. Book noticed other African American

employees were treated differently based on their race such as receiving less

negative feedback for inferior work, fewer tasks required of them, extended or

more frequent breaks than Mrs. Book.

28.

On or about October 2020, Mrs. Book began to suffer significant symptoms consisting of a painful lump or growth on the side of her head where she previously had a brain tumor, severe migraines, dizziness, and an inability to walk or stand for long periods of time which was similar to those she suffered during her first brain tumor.

29.

Mrs. Book's new symptoms exacerbated her current disabilities and made her job more difficult to perform.

30.

Mrs. Book informed her superiors, specifically Lativia Rivers of her condition immediately and regularly attended doctor's visits to address her disability and attempt to alleviate her pain.  If Mrs. Book did need to miss work or leave early for her medical condition, she provided Defendant with proper notice, to the extent possible.

31.

As Mrs. Book's condition continued to worsen, Mrs. Book requested reasonable accommodations for her condition such as time off to attend doctor's appointments and recover from severe symptoms, and occasional breaks to sit down and/or rest when needed at work.

32.

Defendant never engaged in an interactive discussion with Mrs. Book to discuss potential reasonable accommodations.

33.

Defendant could have easily made such accommodations for Mrs. Book while suffering from her medical conditions by permitting other employees to assist Mrs. Book with her tasks or completing them if she was unable to perform her full tasks.

34.

On more than one occasion, Defendant denied Mrs. Book time off to go to doctor's appointments and was also denied time to leave work early when her migraines and dizziness were too much to endure at work.

35.

Mrs. Book was also scolded for sitting down to take a break when the pain made her unable to stand for long periods of time.

36.

Eventually the symptoms became so significant that Mrs. Book sought treatment from the emergency room and is continuing to seek doctors' care.

37.

Mrs. Book provided documentation from her doctor regarding her medical

9

condition and kept open lines of communication with Defendant.

38.

Throughout Mrs. Book's employment, any time that she requested time off was pursuant to her annual leave.  Defendant never discussed FMLA or any other remedy for any necessary medical leave.

39.

Mrs. Book's supervisors questioned if she would need medical leave and how long she would need while explaining to her how necessary it was for all of the employees to be present at work at all times.

40.

On or about October 16, 2020, Mrs. Book after seeking treatment from the hospital, returned to work to resume her position as visitor information specialist.

41.

On or about October 20, 2020, just days after her return to work, Mrs. Book requested to leave work early due to her debilitating migraines but was denied this request.

42.

The same day her request was denied, Deputy Commissioner Mark Jaronski, along with Karen Hampton later appeared at the Welcome Center and informed Mrs. Book that she needed to resign, or she would be terminated.

43.

Karen and Mark then gave Mrs. Book a termination letter as well as a pre-typed letter of resignation which they encouraged Mrs. Book to sign and return to Defendant.

44.

Despite Mrs. Book's requests for the reason for her termination, Mark Jaronski refused to give any reason, nor would Lativia Rivers or Karen Hampton discuss the matter with her.

45.

Mrs. Book had no recent write-ups or disciplinary action prior to her termination.  Any reason Defendant could have given for her termination would have been merely pretextual.

46.

On or about October 26, 2020, Mrs. Book received a separation notice from Defendant.

47.

As of the date of this filing, Mrs. Book is continuing to seek treatment for her medical condition although she is able to perform the tasks required for her position.

48.

Mrs. Book filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 12, 2021. Mrs. Book received a Right to Sue from the EEOC on February 16, 2021.

49.

Mrs. Book believes that she has been unlawfully discriminated and retaliated against on account of her race and disability as well as retaliated against for having engaged in protected conduct by previously filing a complaint inquiry with the EEOC.

## THEORIES OF RECOVERY

### Count I

**The Americans with Disabilities Act of 1990, as amended.**
**42 U.S.C. §§ 12112, et seq. ("ADA")**

50.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

51.

As a result of the painful symptoms of Plaintiff's disabilities, Plaintiff requested reasonable accommodations from her employer.

52.

Defendant neither provided Plaintiff with a reasonable accommodation nor engaged in any discussions with Plaintiff regarding any potential reasonable accommodation(s) that could be useful to Plaintiff, in violation of the ADA.

53.

Instead of attempting to find reasonable accommodations for Plaintiff to continue her employment, Defendant terminated Plaintiff for seeking medical assistance for her disability.

54.

Defendant's actions as set out above constitute an actionable violation of The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112, et seq. ("ADA").

55.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages - general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

56.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

## <u>Count II</u>

**Family and Medical Leave Act**
**29 U.S.C. 2601, et.seq. ("FMLA")**

57.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

58.

By its actions specified herein, Defendant willfully, knowingly, and/or recklessly violated provisions of the FMLA and accompanying federal regulations.

59.

As a result of Defendant's violations of the FMLA, Mrs. Book was terminated from her employment without the opportunity to exercise the rights afforded her under the FMLA.

60.

Defendant's actions as set out above constitute an actionable violation of the Family and Medical Leave Act, 29 U.S.C. 2601, et.seq. ("FMLA")

61.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages - general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

62.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

## **Count III**

### **Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq**

63.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

64.

On numerous occasions Defendant engaged in discriminate and disparate treatment against Mrs. Book.

65.

Despite Mrs. Book's complaints of such discriminatory treatment, Defendant failed to take any action to stop, change, or remedy such conduct.

66.

Defendant's actions as set out above constitute an actionable violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq ("Title VII).

67.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages

- general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

68.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

## Count IV

## Retaliation

69.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

70.

Throughout her employment with Defendant, Mrs. Book filed numerous complaints against Defendant for discriminatory conduct on the basis of her race and disabilities.

71.

Upon her development of new medical symptoms and conditions, Defendant terminated Mrs. Book rather than permit her to exercise her rights afforded her under the Family and Medical Leave Act.

72.

Defendant's actions as set out above constitute an actionable retaliation

violation of The Americans with Disabilities Act of 1990, as amended, the Family and Medical Leave Act, and Title VII of the Civil Rights Act of 1964, as amended.

73.

As a result of Defendant's actionable conduct, Plaintiff is entitled to damages - general, compensatory, liquidated, and punitive - in an amount to be proven at trial and awarded according to the enlightened conscience of a jury.

74.

Plaintiff is also entitled to an award of litigation expenses and attorney's fees according to relevant law.

**Count V**

**Punitive Damages**

75.

Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully stated herein.

76.

Defendant's actions constitutes willful misconduct, demonstrating wantonness, oppression, and the entire want of care which would raise the presumption or conscious indifference to the consequences that entitle Plaintiff to

recover punitive damages pursuant to the punitive damage provisions of the

statutory causes of action hereinabove stated.

## Count IV

### Attorney's Fees and Expenses

77.

Plaintiff is entitled to the costs and expenses associated with bringing and

prosecuting this action, to include attorney's fees, pursuant to applicable law as

contained within, and applicable to, the statutory causes of action contained herein

above.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays as follows:

a)   that Summons be issued and Defendant be served as provided by law;

b)   that Plaintiff be awarded judgment in her favor with respect to all contentions in her Complaint;

c)   that the Court declare that Plaintiff was discriminated against on the basis of her disability and race;

e)   that Plaintiff be awarded declaratory relief in the form of reinstatement of her position prior to termination;

f)   that Plaintiff be awarded actual and liquidated damages, including lost wages, benefits and prejudgment interest thereon as proven at trial;

g)   that Plaintiff be awarded compensatory damages for mental, emotional, and physical suffering in an amount to be determined by the enlightened conscience of an impartial jury;

h)   that Plaintiff be awarded punitive damages in an amount to be determined by a jury at trial to be sufficient to prevent such conduct as alleged herein from occurring in the future and commensurate with the harm done to Plaintiff;

i)      that Plaintiff be awarded reasonable attorney's fees and expenses of litigation;

j)      that all issues triable by jury be tried by a jury;

k)      that all costs of this action be taxed to Defendant; and

l)      for such other and further relief as unto this Court may seem just and equitable in the premises.

This 14th day of May, 2021.

*/S/Heather L. Champion*
Heather L. Champion

Counsel for Plaintiff

Heather L. Champion, P.C.
5353 Veterans Parkway, Suite C
Columbus, Georgia 31904
(706) 323-5353
heather@hlchampionlaw.com
Georgia Bar No:  683572